RECEIVED

JAN 2 4 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| JOSEPH C. SMITH | CIVIL ACTION NO. 05-1748 |
| VS. | JUDGE MELANÇON |
| JO ANNE BARNHART, Commissioner Social Security Administration | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED**.

### *Background*

Born on June 17, 1956, Joseph C. Smith ("Smith") is currently 50 years old..[1] Smith has a high school education and has worked in the past as a truck driver and security guard. Smith injured his neck in the late 1990's and underwent an anterior cervical discectomy and fusion.[2] Smith returned to work. In August, 2002, Smith injured his right shoulder and re-injured his neck as the result of an automobile accident. On August 1, 2003, Smith applied for disability and supplemental security income benefits, alleging disability as of August 2, 2002 due to neck and shoulder pain.[3] Following an administrative hearing on February 25, 2005, the Administrative Law Judge (ALJ) denied Smith's application, finding that he could perform sedentary work

---

[1] Tr. 38.

[2] Although there are no records of the surgery itself, the medical records substantiate this fact, and the ALJ found that Smith is "status post discectomy of C5-6 and C6-7." *See* Tr. 16.

[3] Tr. 38-74, 169A-169E.

which existed in substantial numbers in the national economy.[4] The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Smith now appeals.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

## *ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

---

[4] Tr. 11-17.

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ found that Smith had severe impairments of degenerative disc disease, spondylosis of the neck and right shoulder, status post discectomy of C5-6 and C6-7, and right arm and hand numbness and pain, but that he retained the residual functional capacity to perform sedentary work with the exception of climbing ladders, scaffolds, or ropes, and working at heights. The ALJ found that Smith's allegations regarding his pain and limitations were not entirely credible. Relying on the testimony of a vocational expert, the ALJ found that there are jobs that Smith could perform which exist in substantial numbers in the economy, and therefore he is not disabled.

## *Assignment of Errors*

Smith alleges the following errors: 1) the ALJ erred in assessing his residual functional capacity; 2) the ALJ erred in relying upon the vocational expert's testimony regarding jobs identified in the Census Code and should have relied on the testimony given in response to a proper hypothetical.

## *Medical History*

In 1994, Smith underwent a discectomy and fusion at C5-6 and C6-7. After recovering from surgery, Smith returned to work.[5]

In August, 2002, Smith was involved in an automobile accident. He was examined at University Medical Center ("UMC") complaining of left shoulder and neck pain.[6] On August 8, 2002, an x-ray of Smith's clavicle showed "mild degenerative changes of the acromioclavicular and glenohumeral joints without fracture or dislocation."[7] On September 3, 2002, Smith continued to experience shoulder and neck pain, and also numbness in his left hand.[8] On December 19, 2002, an MRI of the cervical spine showed marginal osteophytes at C3-4 and C4-5 with mild encroachment on the cervical cord.[9] An MRI of the left shoulder showed degenerative changes with mild impingement upon the supraspinatus tendon.[10]

On October 4, 2003, at the request of DDS, Smith was examined by Dr. John Canterbury, an internist.[11] Dr. Canterbury noted that Smith's chief complaint was neck pain that radiated down into his back. During the examination, Smith complained of a burning type pain going down into his upper extremities bilaterally. Dr. Canterbury concluded:

---

[5] See fn. 2, *supra*.

[6] Tr. 92.

[7] Tr. 94.

[8] Tr. 90.

[9] Tr. 88.

[10] Tr. 94. "A muscle that is responsible for elevating the arm and moving it away from the body." See www.medterms.com

[11] Tr. 95-97.

1. Neck pain. It appears from the x-ray and per the history of the patient, the patient certainly has some real pathology in his neck. Also it appears that his pain is coming from his neck. It is radiating type pain that appears to be neuropathic in origin. Also the patient's pain per his own history appears to be causing him the most disability, specifically disability in terms of picking things up.

2. This patient does appear to be able to sit, stand, and walk. He is able to lift 15 pounds per questioning. Lifting is limited secondary to the pain and burning that he is experiencing in his cervical and neck. Hearing and speaking appear to be intact. The handling of objects appears to be intact.[12]

Smith was also treated by Mark St. Cyr, an internist. Smith's chief complaint was neck and shoulder pain, with numbness in his hands. On November 20, 2003, Smith continued to complain of neck pain. An MRI taken on December 3, 2003, showed the following:

Disc space narrowing is seen at C2-3 and C3-4. Decreased signal intensity is seen in the intervertebral disc consistent with disc degenerative disease. There is straightening of the normal lordotic curvature of the cervical spine. At C3-4, there is spondylosis and broad base central disc protrusion producing severe canal stenosis with flattening of the cord. Foraminal narrowing secondary to uncovertebral joint hypertrophy is seen bilaterally. At C4-5, there is again central disc protrusion with accompanying spondylosis producing severe canal stenosis and flattening of the cord. Bilateral foraminal narrowing is seen. At C5-6, at the fused level, there is persistent mild to moderate canal stenosis with some deformity of the cord seen here as well. The canal resumes a normal diameter at C6-7. No definite signal abnormality is seen within the cord. No abnormal enhancement is seen. The soft tissues are unremarkable.[13]

The MRI was interpreted by Dr. Joan C. Wojak, Director of Interventional Neuroradiology at Lourdes Hospital, as follows:

Status post anterior cervical fusion at C5-6 and C6-7. Disc degenerative disease. Spondylosis and central disc protrusion producing severe canal stenosis at C3-4

---

[12] Tr. 97.

[13] Tr. 109.

and C4-5. Persistent moderate canal stenosis at C5-6. Clinical correlation recommended. Foraminal narrowing described above.[14]

On March 22, 2004, Smith complained of burning in his legs and lower back.[15] On April 6, 2004, Dr. St. Cyr noted that Smith had a cervical and lumbar injury with radicular symptoms and generalized myalgia secondary to those injuries.[16] On August 9, 2004, Smith complained to Dr. St. Cyr that due to his pain, he was unable to sit for long periods of time.[17] On September 13, 2004, it was noted that Smith was taking Lortab and Flexeril for pain relief.[18]

On March 24, 2005, an electromyography and nerve conduction study performed at the Medical Center of Louisiana at New Orleans showed moderate carpal tunnel syndrome on the right side with radiculopathy.[19]

### *Smith's Testimony*

Smith testified at the administrative hearing that his neck pain radiates down into his arms, hands, and back, causing numbness.[20] Smith testified that he cannot hold things in his hands, so he cannot write and his wife has to help him eat.[21] He cannot lift his arms above shoulder level and he cannot pick up his grandchildren. He cannot squat.

---

[14] Tr. 108.

[15] Tr. 148.

[16] Tr. 147.

[17] Tr. 143.

[18] Tr. 142.

[19] Tr. 169.

[20] Tr. 175.

[21] Tr. 181.

Smith's wife, Cecilia, testified that Smith needs a walker to walk distances, and he needs to rest after standing or sitting for more than 10 minutes.[22] Mrs. Smith testified that Smith can no longer drive or do yard work.

*Findings and Conclusion*

After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. §405(g), the undersigned concludes that there is no substantial evidence in the record to support the Commissioner's finding of non-disability.

**I. Residual Functional Capacity**

Smith contends that the ALJ erred in failing to find that Smith suffered from severe impairments of "spinal canal stenosis with flattening and deformity of the spinal cord" and "moderate right carpal tunnel syndrome with EMG evidence of right C7-8 radiculopathy." Smith argues that the ALJ's failure to properly consider his impairments resulted in an incorrect residual functional capacity ("RFC") assessment.

The record shows that the ALJ found that Smith suffered from the severe impairments of degenerative disc disease, spondylosis of the neck and right shoulder, status post discectomy, and right arm and hand numbness and pain.[23] Although the ALJ did not list Smith's spinal canal stenosis and carpal tunnel syndrome as severe impairments, he did list the symptoms of these two impairments as severe: neck and right shoulder pain, and right arm and hand numbness and pain. The inclusion of these symptoms, in combination with the that fact the ALJ did not stop his analysis at Step 2, shows that the ALJ did not err in his severity analysis.

---

[22] Tr. 177-78.

[23] Tr. 13.

Although the severity analysis was not erroneous, there is no substantial evidence in the record to support the ALJ's RFC assessment. The ALJ found that Smith had the following RFC:

> [T]he claimant retains the residual functional capacity to lift and carry no greater than ten pounds occasionally and less than ten pounds frequently; to sit for up to six hours of an eight-hour workday; and to stand and walk for two hours of an eight-hour workday. Further, the claimant should avoid climbing ladders, scaffolds, or ropes, and working at heights.[24]

In making this assessment, the ALJ discounted Smith's allegations of pain and disability:

> The claimant was not entirely credible in his allegations of total disability. The claimant does have impairments that cause significant pain; however, the claimant was slow to take another MRI in 2003, behavior inconsistent with one alleging disability to the extent that he did. Had he been as disabled as he alleged, this procedure would have been readily accepted. Even so, despite his alleged disabling symptoms, the objective medical evidence does not support the subjective evidence, and therefore, his credibility is not fully established, at least to the extent of total disability.[25]

As the quote above shows, the ALJ discounted Smith's allegations of disabling pain and symptoms because he was "slow to take another MRI in 2003." Aas discussed above, Smith had his first MRI on December 19, 2002. On September 19, 2003, Dr. St. Cyr noted "MRI c-spine."[26] On November 20, 2003, he wrote, "Patient instructed to get MRI."[27] The record shows that Smith had an MRI done the next month, on December 5, 2003.[28] The ALJ does not explain how the delay of less than three months in getting a *second* MRI shows that he was not experiencing the pain and disabling symptoms he described. The ALJ did not question Smith at

---

[24] Tr. 14.

[25] Tr. 13.

[26] Tr. 112.

[27] Tr. 110.

[28] Tr. 109.

the hearing concerning the cause for the delay. The undersigned concludes that the ALJ erred in discounting Smith's credibility based on a two-three month delay in obtaining a second MRI.

Moreover, the ALJ erred in finding that Smith's allegations lacked objective medical support. The uncontroverted medical evidence shows that Smith had a discectomy and fusion at C5-6 and C6-7, he suffers from degenerative disc disease and spondylosis in his neck and right shoulder, an MRI showed spinal canal stenosis with flattening and deformity of the spinal cord, and a nerve conduction study showed carpal tunnel syndrome on the right with evidence of radiculopathy. Dr. St. Cyr found that Smith had decreased motor function in his upper extremities.[29] According to Dr. Wojak, the radiologist who interpreted the 2003 cervical MRI, Smith had "central disc protrusion producing severe canal stenosis at C3-4." Further, the DDS consultative examiner found that Smith "has some real pathology in his neck."[30]

The medical records contain overwhelming evidence that Smith has chronic pain in his upper extremities and neck that radiates into his back and hands, and medical tests support Smith's allegations of pain. In cases where uncontroverted medical evidence reveals a basis for subjective complaints of pain, an "ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review" unless the ALJ provides an articulated basis for discrediting the claimant's credibility. Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). Since the ALJ's basis for discrediting Smith's allegations of pain was erroneous, the record does not support the ALJ's decision to discount Smith's complaints of pain. As a result, the ALJ's RFC assessment should have

---

[29] Tr. 148.

[30] Tr. 97.

included Smith's inability to hold things in his hands, raise his arms above shoulder level, squat, and the need to rest after walking 10-15 minutes and switch positions from standing to sitting and vice versa after 15 minutes.

## II. Vocational Expert Testimony

Smith maintains that the ALJ erred in relying on the vocational expert's testimony given in response to a hypothetical which did not include all of his limitations.[31]

At the administrative hearing, the ALJ and the vocational expert had the following colloquy:

> Q. Okay. We have a younger individual, 48-years of age, with a 12th grade education, who has a light RFC, that is, he can carry ten pounds occasionally, ten pounds or less frequently, stand or walk two hours of an eight-hour day, sit six hours of an eight-hour day, but cannot do any climbing, work with ropes or ladders or heights. Can he do his past relevant work?
>
> A. Sir, you said, it was a light RFC with a lift of ten pounds occasionally, less than ten frequently?
>
> Q. Yes.
>
> A. Okay stand/walk is two of eight?
>
> Q. Correct?
>
> A. And sit six?
>
> Q. Correct.
>
> A. Okay. But that is really in the sedentary range.

---

[31] Smith also argues that the vocational expert's testimony relied upon by the ALJ was faulty because he relied on the Census Code rather than the Dictionary of Occupational Titles "DOT"), which is what the ALJ should rely on in determining work requirements. SSR 00-4p. Smith argues that the definitions of the jobs identified by the expert (cashier and general office clerk) differed in Census Code and DOT. Considering the undersigned's finding that the ALJ's RFC assessment was erroneous, it is unnecessary to address whether the ALJ erred in relying on testimony given in response to an hypothetical that only included the erroneous RFC.

Q.   Correct.

A.   All right. So therefore he could not do his past relevant work. He had one job, which was light duty, the security guard, and I'm not sure, he had ended in '86, so I'm not sure if it's beyond 15 years or not, but, given this RFC, he couldn't do that. The others are medium and heavy.

Q.   All right. At this exertional level, is there work that exists in significant numbers in the national economy which he can do?

A.   Well this describes a full range of sedentary work, and he's done semi-skilled work in the past, so there would be many, many jobs in significant numbers, semi-skilled, sedentary work that this person could perform.

\*\*\*

Q.   All right. In addition to that previous RFC, provided that you do no overhand, overhead work, no two-handed, no work involving push/pull of the upper extremities, no heavy machinery, no squatting, bending, or stooping, and we need to change our position after 15 minutes, is it, can he do any [of the cashier or general clerk] jobs?

A.   No, sir. There would be no jobs that person would qualify for with those restrictions.[32]

As discussed above, the undersigned finds that the ALJ's RFC was erroneous because it did not include the limitations expressed by Smith at the administrative hearing, i.e., limitations on his ability to use his hands, raise his arms, squat, and his need to rest and change positions after 15 minutes of sitting, standing, or walking. Using this RFC, and relying on the testimony of the vocational expert, it is clear that there are no jobs which Smith can perform. Accordingly, substantial evidence does not support the ALJ's finding that Smith was not disabled.

## *Conclusion*

For the foregoing reasons, the undersigned concludes that substantial evidence does not support the ALJ's determination of non-disability because the RFC used by the ALJ did not

---

[32] Tr. 185-186.

include all of Smith's limitations. Further, in response to a hypothetical that included all of Smith's limitations, the vocational expert testified that there are no jobs which Smith can perform. Accordingly, it is recommend that the Commissioner's decision be **REVERSED** and Smith be awarded benefits consistent with an onset date August 2, 2002.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on January 24, 2007.

COPY SENT:
DATE: 1/24/07
BY: CW
TO: Mem
    TLM

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, LA 70501
(337) 593-5140     FAX 593-5155